We'll proceed then to hear argument in United States v. Rose, No. 20, 1669. Is everyone set?  Very good. Good morning. Counsel. Good morning, Your Honor. John Gleeson. Good morning. From Debevoise and Plimpton for Appellant Greg Rose. The critical question raised by this appeal was answered by this court in Brooker after we filed our opening brief. There's a couple of other questions I'll get to in a moment. But Judge McAvoy has the authority to reduce Greg Rose's sentence. And he erroneously held otherwise. And there's every reason to believe he'll be pleased by the remand because he obviously wants to reduce the 90 year sentence he was forced to impose. The other two issues I respectfully suggest this court should address are first. And this is one that's hung up a number of district judges, not just Judge McAvoy. And it's this. The discretion to reduce a sentence under 3582 C1A is not limited in any respect by any mandatory minimum sentencing provision, period. I'd like to interrupt you for a minute. I'm sorry. But I did not see any place in the record where you asked for a reduction other than for immediate compassionate release. And I thought in reading the district court's opinion that that's what he thought he was ruling on. Did I miss something there? Well, Your Honor, we asked for a reduction to time served, but a reduction to time served. And in this case and many others that we've been making such motions in certainly doesn't preclude the court from granting us. It's a sentence reduction statute. Obviously, the extent of the reduction we asked for, Judge Carney, was down to time served. But the judge was perfectly free to exercise his discretion to sentence to to reduce the sentence to a lesser degree to a number of years over and above the roughly 16 he had served at the time. Was it on Judge McAvoy to just take that request for immediate release as a general motion for reduction? And once he got past the Brooker issue, which the law has obviously changed on that now, to just imagine that he had been requested to reach some other sentence and basically to resentence. Well, not imagine, Judge, because, you know, this has become known as the compassionate release statute. But that phrase is a colloquialism. You can't find it in the statute. We asked for a sentence reduction. And we did argue that the appropriate reduction would be down to a sentence of time served. But by no means did we suggest that there ought there ought to have needed to be an all or nothing proposition. And implicit, fairly implicit, I'll suggest to the court in our request for a sentence reduction to time served was a sentence reduction to what the judge thought was fair, even if in his discretion, he thought it would be a sentence greater than time served. And he denied that motion without prejudice to renewal. So you would be free to go back to him now and move for reduction to another period now understanding better what his thinking is. Is that correct? I think that's correct. We are going to strongly suggest to the court that we should there should not be an affirmance subject to the possibility of a renewed motion for plenty of reasons. One is with respect. We feel we preserved our our application for a sentence reduction lesser than a sentence reduction down to 17 years. And also going back to square one from for Mr. Rose wouldn't be an appropriate resolution. I think it's crystal clear both for the reasons that we're discussing now and because the judge misapprehended his authority with respect to sentencing below an applicable mandatory minimum. Yeah, I'm sorry. No, I, with respect to his misapprehending his authority. I read his opinion differently than you did. I did not see him say, I cannot do this. I could not do that. It was I would not even if when he was discussing his alternative finding. And I wonder what you can point to his most strongly establishing that he did not have a clear view and correct view of his authority to implement a reduction, particularly, you know, in light of his invitation to come back with another proposal. The the single most powerful response to that question is on special appendix, page 21, where the court said, and this is the part of the court's opinion, the government selectively quotes. The full quote is until such time as Rose has served enough time to satisfy even the minimal sentence that Congress now deems appropriate. For multiple section 924 C convictions in a single case with no prior 924 C conviction and assuming authority for the court to make the determination, the court would not find that section 924 C's former stacking of enhanced penalties provides an extraordinary and compelling reason for Rose's compassionate release. And I'll suggest to this court that that first clause is reflects a fundamental misapprehension of the authority conferred by 3582 C1A. Why do you think that describes what the court thought its authority was as opposed to an appropriate measure for the exercise of its discretion to say, well, look, I think that the old sentencing scheme is excessive here. But I think the new sentencing scheme is fair, and I think you should serve as much as you would serve if I were to sentence you today. Now, I know that you've made an argument that you don't think that he would be sentenced that today. But just taking that premise, why would a district court not be able in the exercise of its discretion to say that, look, I think that you should at least have to serve how much I would sentence you if I gave you today? Because Judge Nardini, Mr. Judge McAvoy made it clear that he would in fact reduce the sentence if he thought he had the authority to do so. He said that the sentence was far too long. He invited the government to permit him to reduce the sentence by vacating two of the 924 C's. So a fair inference from this record is if he thought he had the authority to reduce the sentence, he would reduce it down at least by 50 years. He wanted to say that. And also, let me just ask you this structurally. Would you agree that a sentencing reduction is a one one way rat? Right. So let's say, for example, the judge had reduced the sentence by, I don't know, whatever. Take your income in 30 years, 50 years, whatever it was. But let's say presume that the defendant would have to serve one more year in prison. You would agree that if a year went by and the defendant had engaged in serious misconduct in prison and if this were brought to the district court's attention, he would not be able to rethink his sentencing reduction. Correct? Correct. It would be fine. So I guess structurally, why would it be inappropriate in a district court's discretion to say, look, I think your sentence as it stands now is excessive. But I don't think I'm ready to reduce it because I want to see how things play out. And let's hypothesize a judgment says, look, I think you probably need to serve another three years.  You come back in three years. If you maintain whatever, you know, good disciplinary record or whatever, you know, come back and see me. What would be inappropriate about that? There would be nothing inappropriate about it. And if that's what Judge McAvoy said, I think I'd have a more difficult argument. But Judge Nardini, that Brown case and the Priestly case that we cited on page six of our reply brief make it clear that if there's any ambiguity with regard to whether a district judge misapprehended the scope of his or her authority, instead of affirming this court sends it back to make sure that the court was not acting, that the that what appears maybe to have been an exercise of discretion was not an exercise of discretion that was influenced by a misapprehension of authority. And I'll suggest that there's room to argue that there's some ambiguity here. But I'll also suggest that it is certainly not the case that Judge McAvoy said what you just said. Oh, I know that. I'm asking that hypothetically. Yes. And hypothetically, I would be in a position where I would need to argue that was an abuse of discretion. I'm suggesting to the court I'm not there because this was done early on this. This you know, this was nine months ago before this series of cases. It's not very many. It's kind of a relative trickle compared to what happened under 404 of first step. But it's early on in the in the incidents of these 924 C1A cases involving the stacked 924 C's. And Judge McAvoy had a notion that there was a floor beneath which he couldn't go. That was wrong. He had a notion that unless the sentence reduction produced release. It would be inappropriate to grant it. That was wrong. Granted, I'll give the court the the argument that one could read into what was written in this opinion. The rationale that you just described, Judge Nardini, but it's not what was said. And this court has been firm in in erring on the side of sending it back when there's some ambiguity about whether it was an exercise of discretion that deserves the deference that you're suggesting this might be accorded. On the one hand, or an exercise of discretion that is inherently an abuse of discretion because it was a misapprehension of authority. Can I ask you, maybe this gets back to something Judge Carney asked before, is what is effectively in real life? What is the benefit your client from a remand as opposed to just filing a new motion? Considering that under the First Step Act, this is not like the crack reduction where you only have one. You only have one crack at it, right? If you have one motion adjudicated on the merits, you can't bring it. In theory, you know, your client can bring this or any client could bring, you know, every every year on New Year's Day could file a new one. Raising either the same arguments or or new facts or whatever the defendant wanted to raise. So I guess as a practical matter, do you think it would be faster if we remanded it? Because actually there I think, well, then you've got to wait for us to write an opinion and maybe we're quick. You have to see what on earth we say, which might have dicta in there that's sympathetic to your client or or pessimistic. It could be more sympathetic to the underlying equities that Judge McAvoy articulated. You'd have to wait for the mandate to issue. Whereas I would think that irrespective of the mandate from our court, you know, and I don't know, let's say you win. The government could petition for rehearing and petition for cert. It drags out for months. Why would you not have an interest in filing something new motion today? Saying, look, Rucker knocked out one leg of your ruling, Judge McAvoy. Let's take the other one from the top. I guess I'm trying to understand tactically what is in real life the benefit or detriment to your client of a remand versus a new motion. Well, I'll say this as an aside, Judge, we'll probably file one today in light of what you've just said, but I'll also add this. You know, we very much want you to disabuse Judge McAvoy of any notion that might be left undisabused, if that's a word, if you affirm. And specifically, we would like this court and this aspect of any decision this court writes would be precedential. We would like this court to say directly and ambiguously, don't you need not feel cabined by in any respect, any mandatory minimum. Even the one that might be applicable were the defendant to be sentenced for the first time today. That's hung up some judges. We also would like you to say in a way that would disabuse multiple judges of a contrary impression that you can grant you can grant a sentence reduction. It's what the statute explicitly has in mind is a reduction, not necessarily release, even in circumstances where the defendant is not going to be released. And that has collateral effects that at such a you know, the one downside to waiting until X number of years is a sentence reduction ordered now has impact on programming, on eligibility. Greg Rose has a projected release date so far down the road. It renders him ineligible for programming in prison. It matters. It matters not to delay a sentence reduction that's felt to be appropriate. And Judge Nardini, if something happens between a sentence reduction ordered today and the ultimate release that gives a judge pause, there are other ways to deal with that. Many of those, in addition to good time being taken away, depending on the on the nature of that. Sorry, a judge can't do that, right? No, no, but it will the judge do. I'm sorry, I don't understand. You're suggesting a judge could do something. I'm suggesting that the there'll be consequences to the defendant. And depending on the nature of the infraction that produces a diminution, for example, of good time, it might be criminal activity. It's not I'm not what I'm trying to suggest to the court is there's no sense in which if a sentence reduction to a degree that's not quite to time served is ordered that there's going to be some felt belief on the part of the defendant that the defendant can act is like free and clear. There's there are there are structural incentives not that include, for example, the fact it's going to be on supervision by the court. I would suggest we move on and hear from the government about this, about whether there were consequences and other aspects of what Mr. Leeson has been advocating for. Thank you, Judge. Thank you very much. Morning, Your Honors. May it please the court. Government, of course, concedes error on point one in light of Brooker. So we're really talking then about this merits decision of Judge McAvoy in the alternative. He anticipated that he could be wrong on the what ended up being the Brooker issue. The law was unsettled at the time. And so he wrote several pages on this alternative merits decision. And he did not find that he could not grant relief, but that he would not. Counsel, do you do you disagree that the judge misapprehended his authority to to grant today relief that would be effective after Mr. Rose had served the current mandatory minimums that he would have received had he been sentenced today? I don't think Judge McAvoy misapprehended his authority there. I read that as a direct response to the argument that Rose raised. How is that a sensible exercise of the judge's authority to decide that he would only entertain a motion for compassionate release at the precise moment when he would also grant it? Wouldn't the more sensible reading of the judge's exercise of discretion be that he would want to at least receive the papers before the date on which he would grant relief if he could, if he had that authority? I don't know that he is saying that the papers couldn't be filed till then. I think that what he writes here is that in response to the argument made strenuously by Rose below that the First Step Act's mandatory minimums should govern because that's what Congress intends these penalties to be. In response to that, he wrote that he hasn't even served that amount of time and in effect, this is page 21 of the opinion, I'm on the normal appendix, page 301. Judge McAvoy says, in asking for a reduction of his sentence to time served, Rose seeks a better result than retroactive application of the amendments to 924C would allow in that he has only served a little over 16 years. Again, this is directly responding to his argument. Judge McAvoy later goes on to suggest that and to say explicitly that Rose would have gotten approximately 420 months of a sentence if he had taken the plea agreement and not gone to trial and essentially seems to be saying that it would be a windfall to Rose to grant the motion now. But doesn't the district court judge also invite the U.S. attorney today to vacate some of the convictions which exercise that authority of today reducing the effective sentence that Mr. Rose would have to serve? How do you reconcile the district court's invitation to the U.S. attorney with your apparent reading that the court made an affirmative decision that he was not going to reduce the sentence until much later on? The portion of his opinion where he's addressing the U.S. attorney and inviting the U.S. attorney's office to make that reduction suggests that Judge McAvoy thinks that at least approximately 50 years, or excuse me, it would be 40 years of a sentence if he took the 50 off might be about right. And that squares with the rest of his decision in which he's talking about the 420 months for the plea, the 594 months, the Borahain, the actual gunman. But he's inviting the U.S. attorney to take action today that would reduce the sentence, not to wait years to reduce the sentence, but today to do it. How do you reconcile that with an interpretation of the district court's authority that the district court did not want to reduce the sentence today if the district court could do it? I just don't see how you reconcile those two. One of the issues on this appeal, or excuse me, before the district court, was the rehabilitation of the defendant in prison. And he, as was shown, and as is in the record, he did not have an exemplary prison record. He had a number of violations. He's had some years without violations. Wasn't the most recent of those violations over five years ago? Yes, Your Honor. In fact, it may have been as long as seven years ago. But I think it was well within Judge McAvoy's discretion in the context of that to basically say, I'm not saying no forever. I'm saying no right now. You can come back later. And he explicitly invites Rose, as has been pointed out this morning, to file another petition. Mr. Perry, do you agree that a 90-year sentence is far too long, as Judge McAvoy wrote? Judge McAvoy made it clear that that is his position. I'm asking what you think. I mean, the mandatory minimums have been reduced, and the stacking potential has been reduced, Congress recognizing that they resulted in extraordinarily harsh sentences that might not serve the purposes of a just and fair penal system. Admittedly, Congress did not make all of these observations and statutory changes retroactive. Nonetheless, it's really extraordinarily harsh. And Judge McAvoy has underscored that. But the government has declined to take any action in response to Judge McAvoy's invitation. Is that right? Well, can I just jump in there to ask you there? Has the government conceded that it has the authority to take the action that Judge McAvoy suggested at the end there? The government has not taken an official position about this in the briefing in terms of the scope of its authority under the Holloway decision, which was written by opposing counsel when he was on the bench. And this is not in the record. But I think it's fair just to answer your question. There have been discussions about this among the parties that are not reflected in the record and an agreement was not reached. And so in the end, though, Congress chose not to make these new mandatory minimums retroactive. And this was not the U.S. attorney's decision. Can I ask you, getting back to a question asked of opposing counsel? And I think it can be asked equally well of the government is what's the difference here between a remand or asking the Mr. Rose and simply file a new motion? And of course, what's good for the goose is good for the gander. I was asking Mr. Rose from his standpoint, why don't you just file a new motion? Well, the same question could probably be asked the same way to government. What's the difference? If you can file a brand new motion that asked for the same thing, what's the harm of just remand? Isn't it? Doesn't it put both the parties in exactly the same position? The same standards would apply. Right. Judge McAvoy is ultimately asked to apply the statute, whether in a new motion or in a revisited version of this motion. Even if we said, for example, look, point number one of your decision was premised on the applicability of the guidelines policy statement. We remand for you to reconsider in light of Brooker. Period. Wouldn't that put everybody in exactly the same position if as if we did what the government said, which is what we affirm. But so you can just file a new motion. What's the difference? Practically, I think there is little difference in terms of Judge McAvoy one way or the other being presented with an opportunity to decide this again. I think the government's position, though, is. Court isn't and shouldn't be in the business of reversing a district court judge when they have not made a legal error. And when he was just responding to the arguments raised by Rose. And so that's the real difference is whether he's going to be found to have committed a legal error when the government's position position is that he didn't. Although in the end, again, as a practical reality, I don't think there would be much difference. Well, what if we and I'll hypothetically for an idea, what if we had something like a Jacobson remand where we retained jurisdiction, but we asked the district court to simply clarify one aspect of their ruling and we say, did you know or did you think that you had discretion to reduce Mr. Rose's sentence to something other than immediate release, some intermediate point or not period. And if the judge writes back and he says, yes, I did understand that, then that's one version of the case. But if the judge writes back and said, no, no, I didn't realize I had that discretion. Well, then that's a different version of the case. It might not the difference between that potentially influence how this court might rule. Well, if that's what the court chooses to do, I think you could get to a result that way. I suspect that Judge McAvoy would indicate that he did understand. But ultimately, yes, that that could be one option of dealing with this. I think that potentially could take longer than, as you say, having Rose just file a new motion. But he's chosen not to pursue that route so far. I see my time has expired. Thank you, Your Honors. Very good. Mr. Gleason, you have three minutes of rebuttal. Yes. And I want to go right back to this notion, if I may, Judge Carney, this this question of why we would not be in the same position. This is Judge Nardini's questions. And the punchline to what I want to use my rebuttal to say is the district courts need your guidance. This is an this is old terrain that's recently opened to district judges. And I want to make my point by starting with Mr. Perry's reference to the as the part of Judge McAvoy's opinion that says in asking for a reduction to time served, Rose seeks a better result than retroactive application of the amendments. This is a fundamentally important point. I want to back up a little bit. The exceptions to finality for federal sentences are set forth in thirty five. Eighty two c c one a is where we are. And it's a it's called compassionate release. It's based on extraordinary and compelling circumstances. The statute mentions age and time in and time in. And then the commission was directed to provide guidance. C1B is where a reduction is permitted by statute or Rule thirty five. Judge Nardini, these are your the Holloway case and the Moore case you were involved in. And then C2 is when there's a commission amendment that's made retroactive by the commission. I'm going to suggest to this court that yet another reason for you to conclude that there's plenty of ambiguity about the correct apprehension of his authority. I'm going to suggest to this court that what Judge McAvoy was doing and you've all been you're all on the bench. He's been on the bench a long time under C2. You can't do any better than the adjusted guideline range created by the retroactive amendment by the commission under under the judicial second look that C1A was originally intended to be, which was intended to include, among other things, a judicial check on prosecutorial discretion. Yes, you absolutely can do better than you would wait for. If four or three were rendered retroactive, you absolutely reading. I'm sorry, Mr. Gleason, but it seems to me that, again, you're you're you're reading an implicit limit into Judge McAvoy's decision that I just don't see there. I mean, I see that there is a sentence reduction mechanism that, of course, is limited to retroactive applicable guidelines. And then the fact that he said in this case, in the exercise of my discretion, and then he tied it, though, to the consideration of thirty five fifty three factors, I wouldn't sentence you to a sentence lower than what I would give you today. But I guess I don't see him having suggested in any way. I mean, I don't think he cites it. Any suggestion that he was sort of misled into thinking there was a linkage between the old guidelines or the guidelines that would apply and the exercise of his discretion. And and I guess that's I guess my question here is, you know, the question between the remand and, you know, just letting Mr. Rose have a clean slate of it with brand new compassionate release motion is, you know, aren't we tied to the principles of, number one, party presentation and number two, the way in which the district court articulated its reasoning? And it seems to me that if we get bogged down in the back in the fourth and I mean, I hypothesize that Jacobson remand, but I would tend to think that'd be even lengthier for the client. You know, why is it advantageous to your client? To to basically have it go back to Judge McAvoy, where he's, in effect, rethinking what it was already an exercise of his discretion or trying to evaluate whether he was really doing it, as opposed to just just trying it from scratch with without this overlay of what he's already said and how we would necessarily be be reviewing what he did previously, because with a new motion, he's not even bound by the law of the case. Right. He's just looking at your motion from scratch. Judge Carney, may I respond? I see I'm over. Yes. Take your time. Judge Nardini. Any when the any decision by this court that impliedly let me back up. This district judge. Seem to accept the notion that there was something objectionable about a sentence reduction below that which would follow if this were a thirty five eighty two C2 type motion. He says he seems to accept the notion that Greg Rose, let's assume for argument's sake, that thirty two years is the currently applicable mandatory minimum. He seems to accept the argument that if Greg Rose does better than that, that's anomalous and that's dead wrong. And district judges need this court's guidance. If we went back down and Judge McAvoy said you see you seeking a better result than retroactive application. Best I can do is twenty eight years, whatever that would twenty eight, thirty two, whatever the number is, that would be wrong. And with all respect, that's what this court does is it it looks at this and sees it. Can it be read in a way? Is it ambiguous? Can it be read in a way that he thinks he lacked the authority to sentence below the currently applicable mandatory minimum? If he did, then you should say, no, you can do that and send it back down. And if he meant something else that he wouldn't do it in the exercise of his discretion. So be it. That's on us on remand. But with respect, it's this court's job to structure the district court's ambits of authority in situations like this. And he misunderstood the authority. The government's relying on a part of his opinion that reflects that misunderstanding. There's nothing wrong with him doing better than 28 years. In fact, the kind of judicial check on prosecutorial discretion Congress had in mind was implemented precisely for that reason. Of course, we might read it differently and read the transcript differently. And that he was using that as just a a point to contrast that in the 16 years that have been served. When he understood a motion for immediate release was being played. But I understand certainly that it may be a time where there is flux in the law that some kind of guidance would be helpful. And if I could just say one thing in response to that judge tie goes to us on that under Brown and Priestly. If there's any ambiguity about whether he thought his his hands were tied on the one hand or this is an exercise discretion on the other. It should not be affirmed. It should be reversed so we can get clarity on remand. And I'll say this. I'm going to take up Judge Nardini. We'll file our new application and get the ball rolling in any event in the district court. I promise you that. Very good. Thank you. Thank you both. Thank you for your arguments. We'll take the matter under advisement.